**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-3211
_____

MICHELLE GOODWIN,
                Appellant

v.

UNIVERSITY OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-21-cv-00755)
District Judge: Honorable Mark A. Kearney
_____

Submitted Under Third Circuit LAR 34.1(a)
October 28, 2024

Before: HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*.

(Filed: November 5, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Michelle Goodwin appeals a summary judgment for the University of Pennsylvania on her claims under the Americans with Disabilities Act, the Pennsylvania Human Relations Act, and the Family and Medical Leave Act. We will affirm.

I

Penn hired Michelle Goodwin in February 2018. She joined the Consortium for Policy Research in Education as a videographer, a role that entailed "videotaping, editing videos, and assembling material into final products that include graphics, audio tracts, and sound effects." App. 445. For most of the eighteen months she was employed with the University, Goodwin reported to Dr. Jonathan Supovitz and worked alongside three other employees: Multimedia Specialist Keith Heumiller, Communications Manager Bridget Goldhahn, and part-time Multimedia Consultant Jonathan Crescenzo.

Goodwin suffered from several conditions while employed by Penn, including bipolar disorder and an ankle fracture. She requested many work accommodations, most of which Penn granted. On April 16, 2018, Goodwin asked to attend biweekly therapy appointments for her bipolar disorder. Penn granted that accommodation on May 7. Goodwin later asked to rescind this request for fear that it would lead to an extended introductory period, but Penn kept it in place, promising that the extension would give her "a sufficient period of time to demonstrate mastery of the job responsibilities." App. 462. Goodwin asked for a similar accommodation on January 11, 2019, this time seeking to attend three hours of therapy appointments per week for six months. Rather than

2

Case 2:23-cv-00755-MAK Document 45-2 Filed 12/11/24 Page 3 of 10
Case 23-3017, Document 46, 12/11/2024, Page 3 of 10

pursuing that accommodation, Goodwin took leave.

Goodwin also requested accommodations related to an ankle fracture that occurred on November 4, 2018. She submitted a remote work request on December 7, 2018, which Penn granted on December 18. This accommodation permitted Goodwin to work from home until January 2, 2019, when she was expected to return to the office. Goodwin sought another accommodation on January 4, 2019, this time for three physical therapy sessions per week. But she rescinded that request.

In addition to accommodations, Goodwin requested leave under the Family and Medical Leave Act and Penn's Short Term Disability program. She submitted her first request for leave on January 15, 2019. Penn granted this request on January 29, enabling Goodwin to take Short Term Disability leave from February 1 through February 12, then FMLA leave from February 13 to April 25. Goodwin later requested to extend her FMLA leave. Penn also granted that request, extending Goodwin's FMLA leave through May 7. And Penn granted Goodwin additional Short Term Disability leave through August 5.

Throughout Goodwin's employment with Penn, she and her colleagues had conflicts. For instance, in October 2018, Supovitz barged into Goodwin's office without a scheduled meeting, red-faced and fists clenched. A few months later, Supovitz removed Goodwin from a video shoot that she wanted to direct. On a different occasion, Heumiller gave Goodwin a podcast assignment with a 24-hour turnaround time. Goodwin reported these incidents, among others, to Human Resources, sometimes lodging complaints of discrimination.

Over time, Goodwin's role became obsolete. Supovitz began to reevaluate the Consortium's staffing needs in October 2018. He formally recommended reorganization in a report that was drafted and issued in early January 2019. Observing that podcasts are more popular and cheaper to produce than videos, the report recommended eliminating the videographer position. Consistent with that recommendation, Goodwin was notified of her termination on August 5, 2019.

Goodwin sued Penn in the United States District Court for the Eastern District of Pennsylvania, claiming discrimination, retaliation, and hostile work environment under the ADA and the PHRA, and retaliation under the FMLA. The District Court granted Penn summary judgment, reasoning that Goodwin had failed to make a prima facie case for any of her claims. On the discrimination and retaliation claims, the District Court alternatively held that Goodwin failed to show that Penn's stated reason for her termination was pretextual. Goodwin appealed.

II[1]

Goodwin argues that Penn subjected her to disability discrimination because of her bipolar disorder and her ankle fracture.[2] The District Court determined that Goodwin's

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment de novo. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015).

[2] Because we "interpret the PHRA in harmony with the ADA," our conclusions about Goodwin's ADA claims have equal force with respect to her PHRA claims. *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 n.21 (3d Cir. 2024).

4

ankle injury was not a "disability" under the ADA. We agree. Although Goodwin's ankle injury was a "physical . . . impairment," she did not introduce evidence from which a reasonable jury could find that it "substantially limit[ed] one or more major life activities" at the time of her termination. 42 U.S.C. § 12102(1); *see Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535–36 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007).[3] Goodwin insists that she still had trouble walking by August 2019, but she did not explain the nature or extent of that difficulty. Because of this failure, the District Court did not err in concluding that Goodwin's ankle injury was not a "disability" under the ADA.

Nor was Goodwin "regarded as" disabled because her ankle fracture was a "transitory and minor" impairment. 42 U.S.C. § 12102(3)(B). The injury was transitory because it had "an actual or expected duration of 6 months or less." *Id.* And it was minor because by the time of Goodwin's termination, "the symptoms and severity" of her ankle injury were mild, and "the nature and scope of any post-operative care" was limited. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 249 (3d Cir. 2020); *see also Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 260 (3d Cir. 2014) (holding that a broken bone in the hand "is objectively transitory and minor").

---

[3] The timing of Goodwin's termination distinguishes this case from our recent precedential decision in *Morgan*, 114 F.4th at 222, where we held that a temporary injury can constitute a disability. The plaintiff in that case was fired while he still suffered back pain and before he was cleared by his chiropractor to perform more than light duty work. *Id.* at 218–19. By contrast, Goodwin was discharged from physical therapy and given an excellent prognosis months before her termination.

5

As for Goodwin's bipolar disorder, the District Court concluded that she failed to show a causal connection between her disability and an adverse employment action. Goodwin cites two adverse employment actions: the extension of her introductory period and the elimination of her position. While the extension of Goodwin's introductory period did pause the accrual of her paid time off, it did not ultimately cause "'some harm' to a term or condition of employment" because paid time off was restored upon completion of the period. *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (quoting *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024)). Similarly, Penn's decision to eliminate Goodwin's position caused "harm to a term or condition of employment" only when it materialized in her termination. *Id.* (cleaned up). The District Court was therefore correct to hold that Goodwin suffered only one adverse employment action: her termination on August 5, 2019.

Goodwin asserted that after she disclosed her bipolar disorder, Supovitz extended her probationary period, exhibited hostile and aggressive behavior, and removed her from a project. Accepting these allegations as true, Goodwin did not show that her bipolar disorder was a "determinative factor" in her termination, *Kairys v. S. Pines Trucking, Inc.*, 75 F.4th 153, 161 (3d Cir. 2023), because she adduced no evidence connecting those instances to her bipolar disorder. She also points to differential treatment as evidence of discrimination. But her proffered comparators, Keith Heumiller and Jonathan Crescenzo, were not similarly situated to Goodwin because they had different titles and job responsibilities. Nor did Goodwin identify an instance in which her colleagues could

engage in conduct for which she was formally disciplined or any other preferential treatment. Finally, Goodwin disclosed her bipolar disorder in April 2018, and she was terminated sixteen months later. That delay precludes a reasonable jury from finding Goodwin's bipolar disorder a determinative factor in Penn's decision to terminate her. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004). So the District Court did not err in concluding that Goodwin's ADA discrimination claim failed for lack of causation.[4]

### III

Goodwin next argues that Penn retaliated against her for seeking accommodations under the ADA. The District Court held that Goodwin failed to show a causal relationship between her requests for accommodation and her termination. We agree because Goodwin did not show (1) "unusually suggestive temporal proximity" between her accommodation requests and her termination, or (2) "a pattern of antagonism coupled with timing." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). She requested accommodations from April 2018 to early July 2019, and she made internal complaints from May 2018 to mid-February 2019. But Goodwin's employment was not terminated until August 5, 2019, nearly a month after her last informal request for accommodations and nearly six months after her last complaint of discrimination.

---

[4] The District Court reached the same conclusion about Goodwin's ankle injury, even assuming that it constituted a disability under the ADA. We agree. Goodwin was fired nine months after she told Penn about her ankle injury, and the record does not otherwise raise an inference of discrimination on this basis.

7

Those gaps, without more, are too large to suggest discrimination. *See Williams*, 380 F.3d at 760 n.4. Additionally, Goodwin's intermittent interactions with her colleagues, while perhaps unpleasant, do not amount to a "pattern of antagonism." *DeFlaminis*, 480 F.3d at 267. As the District Court explained, Goodwin's complaints about her colleagues are more like "interpersonal workplace strife" than "verbal abuse." *Goodwin v. Univ. of Pa.*, 2023 WL 8027306, at *21 (E.D. Pa. Nov. 20, 2023). So Goodwin did not meet her burden of showing that retaliation was a determinative factor in her termination.

IV

Goodwin also argues that she was subject to a hostile work environment in violation of the ADA. But she has not pointed to any conduct that was "sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment." *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). Goodwin asserts that Penn subjected her to "relentless aggression, ostracization, bullying, humiliation, and physical intimidation." Goodwin Br. 59. The record does not bear this out. Goodwin's hostile work environment claim fails for much the same reason as her other claims: Penn's alleged conduct was little more than "interpersonal workplace strife." *Goodwin*, 2023 WL 8027306, at *21. And even had Goodwin pointed to sufficiently severe or pervasive conduct, the District Court correctly

observed that she failed to link that conduct to her bipolar disorder. So Goodwin cannot prevail on her ADA hostile work environment claim.

V

Goodwin next asserts that Penn retaliated against her for invoking her FMLA protected rights. We agree with the District Court that Goodwin once again failed to show causation between her FMLA leave, which expired in May 2019, and her termination, which occurred in August 2019. This "gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). And Goodwin cannot point to a "pattern of antagonism" between the time she requested medical leave and the date of her termination because she was on leave almost the entire time. *Budhun*, 765 F.3d at 258. So the District Court did not err in granting summary judgment on Goodwin's FMLA claim.

VI

Finally, Goodwin challenges the District Court's alternative holding that, even if she had made a prima facie case of discrimination or retaliation under the ADA, PHRA, or FMLA, she still could not prove pretext. Here again, we agree with the District Court. Penn offered a legitimate, nondiscriminatory reason for Goodwin's termination: the videographer position had become obsolete because videos are more expensive and less popular than podcasts. Goodwin has not shown that this reason was pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). She argues that she wasn't just a videographer,

9

asserting that podcast production "became an integral part of [her] responsibilities as early as the spring of 2018." Goodwin Br. 55. But no matter how Goodwin describes her role, she was hired to be a videographer who "videotap[es], edit[s] videos, and assembl[es] material into final products that include graphics, audio tracts, and sound effects." App. 445. Although Goodwin did take on some podcasting duties during her employment, the reallocation of those duties does not, by itself, demonstrate pretext. The Consortium's January 2019 Reorganization Plan recommended that "[p]odcast production . . . be partially incorporated into Heumiller's job responsibility," which aligned with Supovitz's observation that Goodwin "decreasingly" had "enough work . . . to work a 40-hour week." App. 1007, 1623. Goodwin recognized as much when she stated that she didn't "have enough work," and when she asked Human Resources "if her job could be eliminated with the lack of work." App. 661, 688. Because Goodwin did not demonstrate that Penn's Reorganization Plan was a pretext for discrimination or retaliation, the District Court did not err.

\*   \*   \*

For the reasons stated, we will affirm the District Court's summary judgment.